**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-11-0000039**
**13-JAN-2012**
**08:14 AM**

NO. CAAP-11-0000039

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

IN THE INTEREST OF NY

APPEAL FROM THE FAMILY COURT OF THE FIFTH CIRCUIT
(FC-S NO. 10-00741)

SUMMARY DISPOSITION ORDER
(By: Foley, Presiding Judge, Fujise and Reifurth, JJ.)

Appellant Mother ("Mother") appeals from the Decision and Order Terminating The Parental Rights of [Mother] and [Father] and Awarding Permanent Custody, filed on December 22, 2010 ("Decision and Order") in the Family Court of the Fifth Circuit ("Family Court").[1]

On appeal, Mother challenges findings of fact C, Q, S, T, U, and V and conclusions of law nos. 3, 5, 6, 8, and 12 contained in the Decision and Order. Although Mother challenges specific findings of fact and conclusions of law, she does not argue them individually. Instead, Mother contends that (1) Petitioner-Appellee the State of Hawai'i, Department of Human Services ("Department") failed to provide her with (a) an adequate opportunity to access services; (b) visitation with her child, NY; and (c) an 'ohana conference[2]. Mother further

---

[1]    The Honorable Calvin K. Murashige presided.

[2]    An 'ohana conference means:

[A] family-focused, strength-based meeting conducted by trained community facilitators that is designed to build and enhance the network of protection for a child who is subjected to a proceeding under this chapter. Ohana conferences include extended family members and other important people in the child's life and rely on them to participate in making plans and decisions. The purpose of the ohana conference is to establish a plan that provides

(continued...)

contends that the Department failed to (2) prove by clear and convincing evidence that it was not reasonably foreseeable that she was willing and able to provide a safe family home within a reasonable amount of time or (3) identify alternative relatives for placement of NY during foster custody.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Mother's points of error as follows:

(1a) Mother claims that the Department failed to provide her with an adequate opportunity to access services due to the fact that the March 16, 2010, Family Service Plan ("Service Plan") had "absolutely nothing to do with Mother" and because the Department determined that "Mother would not be afforded services due to her incarceration." The record, however, reflects that the Service Plan was explained to Mother and that she "knowingly and voluntarily stipulated to . . . the interim family service plan . . . dated <u>March 16, 2010/Parts 1 & 2</u>[.]" Neither did Mother object to the lack of specific services for her in the Service Plan at the termination of parental rights hearing. She has not, in any event, identified where in the record she raised the issue to the Family Court. Therefore, the claim is disregarded. Haw. R. App. P. 28(b)(4).

Even if we did consider the merits of the claim, the Hawai'i Supreme Court has already held that "it is not reasonable to expect [the Department] to provide services beyond what was available within the corrections system" and "the completion of a service plan is an empty pursuit until the parent has been released and is capable of raising a child again." *In re Doe*, 100 Hawai'i 335, 345, 60 P.3d 285, 295 (2002). Therefore, the Family Court did not err.

Mother further contends that the Family Court concluded that she was not willing and able to provide a safe family home

---

[2/] (...continued)
     for the safety and permanency needs of the child.

HAW. REV. STAT. § 587A-2 (2010).

"based exclusively on the fact that she was incarcerated" and that such a conclusion was expressly prohibited by *In re Doe*. Mother, however, does not identify where in the Decision and Order the court claims to base its conclusion exclusively on that fact.

Rather, the Family Court stated that it based its conclusion on the fact that Mother had already had her parental rights terminated as to two of NY's siblings; she had received inpatient residential drug treatment while imprisoned, had not been clinically discharged and had failed to complete the service; she had used illicit drugs while pregnant with NY's younger sibling; she had a dual diagnosis of substance abuse and bipolar/post traumatic stress disorder; she had seen NY only once between 2004 and 2008; she was currently incarcerated for felony drug offenses and was sentenced to an open 10-year term of imprisonment; she would need to complete 9 months of inpatient substance abuse treatment prior to being considered for any furlough; the earliest that she could complete treatment and be considered for furlough would be one year following the termination-of-parental-rights trial; she had failed to complete inpatient substance-abuse treatment twice before, and using the past as a predictor of her future behavior, it was unlikely that she would complete substance-abuse treatment within the aforementioned one year period; and, even if she completed substance abuse treatment within one year and was granted a furlough from prison, it was not foreseeable that she would also adequately address her parenting deficits and her bipolar and post traumatic stress disorders in order for her to be able to provide a safe family home. The court's findings are consistent with the requirements of *In re Doe*, that: "involuntary confinement . . . for a criminal offense does not mandate a per se forfeiture of a parent's rights to a child. . . . However, incarceration may be considered along with 'other factors and circumstances impacting the ability of the parent to remedy the conditions of abuse and neglect.'" 100 Hawaiʻi at 345, 60 P.3d at 295 (citations omitted) (quoting *In re Brian D.*, 550 S.E.2d 73,77 (W. Va. 2001)).

3

(1b) Although Mother requested visitation with NY in several pre-termination hearings throughout 2010, the Family Court left that issue to the discretion of the Department. On appeal, Mother provides no argument about any obligation on the Department's part to provide visitation or how the Department abused its discretion in not arranging visitation between NY and Mother, when Mother and NY lived on different islands. Therefore, the point of error is deemed waived. Haw. R. App. P. 28(b)(7).

(1c) The Department did not afford Mother with an ʻohana conference as she requested. However, Mother does not have an absolute right to an ʻohana conference under Hawaii Revised Statutes ("HRS") chapter 587. Rather, the law required that the service plan should include "[t]he consideration given to the use of ohana conferences for family decision making[.]" HAW. REV. STAT. § 587-26(c)(1) (2006) (repealed 2010).[3] The new statute regarding the service plan similarly provides discretion, requiring only that the plan shall provide "[w]hether an ohana conference will be conducted for fact finding and family group decision making[.]" HAW. REV. STAT. § 587A-27(a)(2) (Supp. 2010). Thus, under both chapter 587 and chapter 587A, the Department has discretion in determining whether it will conduct an ʻohana conference.

After Mother requested an ʻohana conference on April 1, 2010, the Family Court stated that the Department would look into the feasibility of holding an ʻohana conference but did not require that one be held. When Mother repeated her request for an ʻohana conference on September 2, 2010, the Family Court noted that the Department did not have the finances to send all of the parties to Oahu where Mother was incarcerated. Mother references nothing that would establish that an ʻohana conference was mandatory. Thus, the Circuit Court did not err by failing to require that the Department provide Mother with an ʻohana conference.

---

[3] In 2010, HRS chapter 587 was repealed, 2010 Haw. Sess. Laws Act 135, § 8 at 314, and replaced by HRS chapter 587A, 2010 Haw. Sess. Laws Act 135, § 1 at 282, which became effective on September 1, 2010.

(2) There was clear and convincing evidence that Mother was not presently able to provide a safe family home and could not provide a safe family home within a reasonable period of time, not to exceed two years from the date NY was first placed in foster custody, even with the assistance of a service plan. HAW. REV. STAT. § 587A-33(a)(2) (Supp. 2010).

From 2004 to 2008, Mother had only visited with NY once. Although Mother blamed foster mother for excluding Mother from NY's life, Mother understood that her parental rights were not terminated and that she had a right to see her child. Nonetheless, Mother admitted that she only attempted to see NY once during that time period. Mother's parental rights to two other children were also terminated prior to the initiation of this case. Mother was incarcerated since 2008 and was not eligible for parole until she participated in and completed 9 months of inpatient substance abuse treatment. The earliest date that Mother could complete the 9-month treatment and be considered for parole would be November 2011. NY was first placed in foster custody in March 2010. Thus, it was reasonable for the Family Court to conclude that Mother could not become able to provide a safe family home within a period of not more than two years since NY was first placed in foster custody. Therefore, the Family Court's conclusion was not clearly erroneous. *Fisher v. Fisher*, 111 Hawai'i 41, 46, 137 P.3d 355, 360 (2006) (citing *In re Doe*, 95 Hawai'i 183, 189-90, 20 P.3d 616, 622-23 (2001)) (conclusions with regard to a child's care, custody and welfare, if supported by the record and are not clearly erroneous, must stand on appeal); *In re T Children*, 113 Hawai'i 492, 499, 155 P.3d 675, 682 (App. 2007) (applying similar facts to the standard).

(3) HRS § 587A-10(b) (Supp. 2010) provides that "[t]he department and authorized agencies shall make reasonable efforts to identify and notify all relatives of the child within thirty days after assuming foster custody of the child." In this case, the Department assumed foster custody of NY on or about March 10, 2010. At a hearing on April 1, 2010, Mother's counsel stated that Mother did not object to temporary foster custody and had no

5

objection to the foster placement.  Furthermore, Mother does not (1) establish that the Department did not fulfill its aforementioned obligations, or (2) explain, even if we assume that the Department did fail, how that relates to the issues in this case.  Therefore, the point of error is deemed waived.  Haw. R. App. P. 28(b)(7).

Therefore,

IT IS HEREBY ORDERED that the Decision and Order filed on December 22, 2010 in the Family Court of the Fifth Circuit is affirmed.

DATED:  Honolulu, Hawai'i, January 13, 2012.

On the briefs:

Gregory H. Meyers
(Hempey & Meyers LLP),
for Mother-Appellant.

Russel K. Goo,
Mary Anne Magnier, and
Jay K. Goss,
Deputy Attorneys General,
for Department of Human
Services-Appellee

Presiding Judge

Associate Judge

Associate Judge

6